NICKERSON and others, Trustees, v. ATCHISON, T. & S. F. R. Co.

(*Circuit Court, D. Kansas.* November, 1881.)

1. TRUST—EXPENSES OF EXECUTING—DEED CONSTRUED.

Where a large body of land is conveyed to trustees to secure the payment of the principal and interest of a great number of railroad bonds, which have a long time to run before maturity, and the grantor, the railroad company, in the trust deed reserves the right to sell the lands and pay the proceeds of the sales thereof to the trustee, after deducting expenses incurred in executing the trust, it may retain the proper amount for expenses in making the sales, and may also pay the taxes out of the proceeds thereof.

2. CONTRACT—CONSTRUCTION ADOPTED BY PARTIES TO.
     Where the meaning of a contract is doubtful, the fact that the parties thereto
at once adopted a particular construction, and for many years acquiesced in
and acted upon it, should lead a court without hesitation to adopt that con-
struction as the proper one.


In Equity.

*Ross Burns, J. G. Waters, A. A. Hurd,* and *S. O. Thacher,* for com-
plainants.

*Geo. R. Peck,* for respondent.

McCRARY, J.   The sole question to be decided upon this demurrer
is whether the expenses attending the sale of the lands by the rail-
road company are properly to be classed as "expenses of executing
the trust;" in other words, we are to determine, from an inspection
of the whole instrument, whether the parties intended that the rail-
road company should make sales of the lands and pay over the gross
proceeds to the trustees, deducting nothing for expenses.   It is very
clear, we think, that the sale of the lands was regarded by the par-
ties as a part, and a very important part, of the execution of the
trust.

The debt secured was very large, and the bonds are not to mature
until October 1, 1900.   The evident intention of the parties was that
the land should be sold as rapidly as possible, and the proceeds ap-
plied, after paying expenses of sale, to the discharge of interest as
it accrued, and the creation of a sinking fund for the payment of the
principal.   By the terms of the mortgage the railroad company was
to retain possession and control of the land, with power to dispose of
the same for cash, or partly for cash and partly on credit, on rea-
sonable terms.   In effect the railroad company was constituted the
agent of the trustees and bondholders to sell the land, and pay over
the proceeds, "after deducting the expenses of executing this trust,"
to the trustees, to be applied upon the payment of the mortgage debt.
The proceeds of the sales, "after deducting the expenses of execut-
ing" the trust, were pledged for the payment of the bonds and inter-
est, and, of course, only the moneys so pledged were to be paid over
to the trustees.   It is true that certain duties were devolved upon
the trustees, and their expenses, including sums paid to clerks,
agents, and attorneys, were to be paid; but we cannot assent to the
proposition that these were the only expenses to be deducted from
the proceed of the sales.   The parties saw fit to so frame the con-
tract as to devolve upon the railroad company many important duties
in connection with the execution of the trust, and we must presume
that the large expenditures on the part of the company, made neces-
sary by the contract, were in the intention of the parties to be in-
cluded in the expenses of carrying out the agreement.

The mortgage abounds in provisions regulating the sale of the lands
and the application of the proceeds thereof.   This feature of the con-
tract set forth in the mortgage is so prominent as to make it very

apparent that its execution must be regarded as part and parcel of the execution of the trust expressed therein.

We are, therefore, of the opinion that the railroad company was authorized to retain out of the proceeds of the sale of the lands embraced in the mortgage its reasonable expenditures incurred in making such sales. The bill does not aver that the expenditures of the railroad company were unnecessary or unreasonable, and it must, therefore, be considered as only raising the question whether the railroad company was entitled to make any charge for selling the land, and to deduct the same from the proceeds of the sales.

The bill further alleges that a large sum has been paid by the company, out of the proceeds of sales of land, for taxes upon the same. As legal taxes were liens upon the land prior and paramount to any claim under the mortgage, it is difficult to see upon what ground their payment can be regarded as an expenditure outside of the trust.

The railroad company, by the terms of the mortgage, was to be suffered and permitted to possess, manage, use, and enjoy the lands in the same manner and with the same effect as if the deed of trust and mortgage had not been made, except as in the instrument otherwise provided; and it was, as we have already seen, to be allowed to manage the matter of selling the lands. The control, management, and sale of the lands by the railroad company was, therefore, provided for as part of the contract and of the trust. The payment of the taxes accruing from year to year was plainly a part of the proper management of the estate. If it had been neglected, the whole property would have been lost, and the bondholders would have been the chief sufferers.

If the land had been sold subject to the taxes, the price received for it would have been correspondingly less, and therefore no damage has resulted to any of the parties interested by reason of their payment. We are, therefore, clearly of the opinion that the payment of the taxes was properly within the duties devolved upon the company in the management and sale of the lands.

If we were in doubt as to either of the questions raised by the demurrer, the fact that the parties themselves who made the contract at once adopted the construction above suggested, and have for many years acquiesced in and acted upon it, would lead us, without hesitation, to resolve our doubts against the claims of the complainants.

The trustees, acting upon the theory that the company was entitled to retain the expenses in question, including sums paid for taxes, have from time to time received the net proceeds of sales ascertained upon that basis, and have voluntarily executed releases in accordance with the terms of the mortgage. It is not necessary to determine whether such action, continued for so long a period, is an absolute estoppel, which deprives them of the privilege of now being heard to assert that this construction was erroneous. It is enough to say

that the construction which the parties themselves placed upon their own contract, and upon which they have so long acted, is the one which the court ought to adopt.

The demurrer to the bill is sustained.

FOSTER, J., concurs.